Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

Alexandria Division

FILED
2024 AUG 30 P 3:44

| | |
|---|---|
| Jared Michael Neiferd<br><br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br>-v-<br><br>Microsoft Corporation,<br><br>Richmond Vlong Baker<br><br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Case No. 1:24CV1533<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ✔Yes ☐No |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I. The Parties to This Complaint

**A. The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Jared Michael Neiferd |
| Street Address | 2507 N Shelley St |
| City and County | Alexandria |
| State and Zip Code | VA 22311 |
| Telephone Number | (202) 642-0367 |
| E-mail Address | j.neiferd@gmail.com |

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 13

Defendant No. 1
- Name: Microsoft Corporation
- Job or Title *(if known)*:
- Street Address: 100 Shockoe Slip Fl 2
- City and County: Richmond
- State and Zip Code: VA 23219
- Telephone Number: (703) 673-7600
- E-mail Address *(if known)*:

Defendant No. 2
- Name: Richmond Vlong Baker
- Job or Title *(if known)*: Manager
- Street Address: 3631 French Woods Rd
- City and County: Charlotte
- State and Zip Code: NC 28269
- Telephone Number:
- E-mail Address *(if known)*:

Defendant No. 3
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Defendant No. 4
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

C.  **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

|  |  |
|---|---|
| Name | Microsoft Corporation |
| Street Address | 12012 Sunset Hills Road, Two Discovery Square |
| City and County | Reston |
| State and Zip Code | VA 20190 |
| Telephone Number | (703) 673-7600 |

II.  **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

☐ Relevant state law *(specify, if known)*:

☐ Relevant city or county law *(specify, if known)*:

III. **Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [✓] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [✓] Unequal terms and conditions of my employment.
- [✓] Retaliation.
- [✓] Other acts *(specify)*: Hostile Workplace

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
July 2021 - March 2023

C. I believe that defendant(s) *(check one)*:
- [✓] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- [ ] race
- [ ] color
- [ ] gender/sex
- [ ] religion
- [ ] national origin
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [✓] disability or perceived disability *(specify disability)*
  Depression, Anxiety, Autism

E. The facts of my case are as follows. Attach additional pages if needed.

Please See Attachment

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

April 24, 2023

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)*  June 3, 2024 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.
☐ less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

    a. Compensatory damages, including but not limited to, back pay, lost wages and benefits, lost bonuses and awards, and front pay, in an amount to be proved at trial;
    b. Other compensatory damages, including but not limited to, damages for emotional distress, repetitional harm in an amount to be proved at trial;
    c. Punitive damages as may be proper and just;
    d. Prejudgment interest, as required by law;
    e. Reasonable attorney's fees and costs of this action and;
    f. Such other and further relief to plaintiff as may be proper and just.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 08/30/2024

Signature of Plaintiff: *[signature]*
Printed Name of Plaintiff: Jared Neiferd

### B. For Attorneys

Date of signing:

Signature of Attorney:
Printed Name of Attorney:
Bar Number:
Name of Law Firm:
Street Address:
State and Zip Code:
Telephone Number:
E-mail Address:

Page 6 of 6

Complaint for Employment Discrimination

## FACTS

1. From Neiferd's date of hire until May of 2020, he received excellent reviews by his managers. His "operational impact [was] outstanding" in early 2019, and later that year was told that his "attention to detail regarding [his] operational excellence shows true pride in [his] work." He was called "a true professional." his supervisor opined that he "lead the way" in important initiatives for the company and that he "embodied the ideals of Microsoft values."

2. In July 2019, Microsoft retaliated against Neiferd by removing him from a customer contract following Neiferd's complaint of discrimination and sexual harassment from a customer and another Microsoft employee. Neiferd also reported retaliation to Workplace Investigations on or about May 14, 2020, but the investigation concluded determining the account manager's state of mind could not be discerned.

3. In February 2020, Neiferd's supervisor noted on his performance review that his utilization was low due to being moved off a project unjustifiably with limited work available through other projects. On May 28, 2020 Neiferd received "insufficient results" on his performance review and did not receive any rewards or bonuses.

4. Neiferd was diagnosed with anxiety and depression in mid 2020 and saw a mental health professional weekly.

5. Around mid 2020, Neiferd was assigned to a new supervisor and on Neiferd's December 2020 review, his supervisor issued "insufficient results" after Neiferd had followed directions defined in his prior review with that same supervisor. The supervisor reasoned in the negative review that Neiferd had not volunteered for engagements that were outside the scope of Neiferd's assigned technology space and that Neiferd had prioritized training that

was not assigned to him or supported by the business when it was in fact Neiferd's assigned training, meaning Neiferd had met this objective.

6. Neiferd was assigned a new supervisor in early 2021 and received a positive performance review in May 2021 as well as rewards.

7. In July 2021, Neiferd was again transferred to a new supervisor and was assigned to Mr. Baker's team. Neiferd disclosed his disability diagnoses of anxiety and depression to Baker during an online meeting over Microsoft Teams with him in August 2021. Shortly after this, Mr. Baker's behavior toward Neiferd changed and seemed targeted based on his disabilities.

8. In November 2021, Neiferd was scheduled to conduct a presentation about depression awareness at a diversity and inclusion team meeting. Three days before the meeting, Baker told Neiferd another employee will be presenting on the same topic as Neiferd and would go ahead of Neiferd during the meeting. Neiferd was asked to help the other employee create their presentation the night before the meeting, indicating that the other employee had not planned or prepared a presentation, and this was a last-minute decision. Neiferd assisted the employee in creating his presentation. At the meeting, Baker announced the other employee's presentation, praising the other employee's great work. Baker did not mention Neiferd's presentation at all. The other presenter spoke for 25 minutes, after which Mr. Baker asked if anyone else wanted to say something. Neiferd reminded him that he was supposed to present; however, because the other presentation took so long, Neiferd only had five minutes and most team members were already leaving the meeting. Baker subjected Neiferd to harassment and disparate treatment by undermining Neiferd's contributions in front of his team members and creating a situation which did not allow Neiferd the same

opportunity to deliver his presentation as Baker did for other team members. No other D&I team meetings had a duplicate presenter.

9. On December 5, 2021, Baker dropped an article into a Microsoft Teams message and sent it to Neiferd without any context. It was an article about an experimental treatment for severe, treatment resistant depression. Neiferd and Baker hadn't discussed details about Neiferd's depression or treatment options prior to Baker sending the article. Neiferd felt Baker's unsolicited suggestions regarding experimental treatments for individuals with severe and treatment-resistant depression were discriminatory and made him feel uncomfortable and harassed based on his disability.

10. Between March 24th, 2022 and June 2nd, 2022, Baker canceled all five of Neiferd's scheduled one on one meetings. These meetings allow the employee to communicate with their manager and receive feedback about performance, expectations, and direction. The meetings are intended to discuss what an employee should expect to see reflected on their performance review. By canceling the one-on-one meetings and avoiding Neiferd, Baker removed the opportunity for Neiferd to get feedback about his work, ask for help, or discuss impact with Baker. Neiferd did not have his manager's support.

11. On the occasion Neiferd did speak with Baker, he was harassed and provoked with intimidating language such as "you're not successful," without explanation, "poor Jared has first world problems," asked if Neiferd "wanted to be here," and told Neiferd that "everyone" was talking about his mental health. However, Neiferd had not heard of any complaints or concerns from anyone and had received positive feedback from all his customers, account managers, and peers. Baker also called Neiferd "slow," told him that he appears to be

disengaged from his peers, and often committed various micro-aggressions related to Mr. Neiferd's disabilities and their presentation.

12. Since April 2021, Neiferd had been working for a federal government customer in Virginia. Over the months that followed, Neiferd found the customer difficult to work with. Neiferd was repeatedly ignored by the customer's contractors he was assigned to work with or told that they did not need him to work on anything. When Neiferd provided suggestions to the customer and offered training for a solution he had implemented, the customer's contractors told him they were "busy", and continued to ignore Neiferd. The other Microsoft employees at this customer were not ignored.

13. On September 22, November 5, and December 10, 2021, Neiferd had meetings with his customer account manager, Ms. Greene, and told her about his concerns and experience working with the customer. Ms. Greene told Neiferd the customer's feedback about his work was positive and suggested Neiferd reach out to the customer's leadership for help. When Neiferd reached out, his concerns were dismissed as if there was no issue.

14. Feeling as though the customer did not want to work with him and his efforts to remedy the situation had no effect, On May 11, 2022, Neiferd spoke to Ms. Greene in a Teams meeting and asked to transition off the customer contract so he could work with another customer engagement he had lined up. Neiferd explained to Greene that he did not feel welcome at the customer. Ms. Greene agreed that this was not a healthy environment for Neiferd and told Neiferd she would speak to the customer and to Neiferd's manager to let them know.

15. Neiferd also had a conversation with another team member, Mr. Carter, who was a colleague Neiferd worked with. Carter had also worked with Ms. Greene's customer in the past; Mr.

Carter opined that the customer was "toxic" and offered to advocate for Neiferd and provide context for Baker on what it was like to work at that customer.

16. On May 12, Baker told Neiferd he had received "negative feedback" from Ms. Green about Neiferd's performance, but wasn't able to provide Neiferd with any specific explanation when asked why. Neiferd asked Ms. Greene in a Teams chat message about this feedback, but Ms. Greene insisted neither she or the customer had ever told Baker that Neiferd's performance was "negative" and that Neiferd had done nothing wrong.

17. On May 23, 2022 Baker met with Neiferd to discuss his impact for the upcoming performance review. When Neiferd asked about being accredited to deliver managed IP offerings ("MIP") for his technical field since he did this at his customer and it was in his training plan. Baker mislead Neiferd and suggested that Neiferd not get accredited. This conflicted with what previous managers expected Neiferd to do in his reviews. Baker also asked Neiferd to add more input to his review in the section for self-reflection and sent the review back to Neiferd along with his recommendation on what Neiferd should have done; Neiferd asked Baker for feedback on what he should have done differently at Ms. Greene's customer. Baker responded "I don't know", "I don't think the customer even knows what they want", and "I probably would have moved away from that customer". Which is exactly what Neiferd did. Baker told Neiferd he wouldn't hold Ms. Green's customer against him. During this discussion, Baker informed Neiferd that he was doing good at meeting his assigned goals and objectives.

18. On May 28, 2022, Baker issued Neiferd a negative performance review and marked the review with "insufficient results". Bakers feedback in the review cited performance issues and stated that "the customer decided to roll you off the contract" and Baker's opinion that

this meant Neiferd did not show the customer value. This is despite not having provided Mr. Neiferd with negative performance feedback related to the account at any time prior during the year Neiferd worked there. Microsoft's policies specifically state that feedback given on a Connect "should reflect and reinforce what you've discussed in regular one on one meetings and other performance discussions with your direct report." Mr. Baker did not provide any critical feedback to Mr. Neiferd until his performance review, especially considering Baker had canceled the previous five meetings. It was at Neiferd's request and agreed upon with Ms. Greene that Neiferd would transition off the customer because it was not a heathy environment. Baker also referred to the retaliation Neiferd experienced in 2019 and being removed from that contract was a reason for giving him an IR on this review.

19. Finally, Baker makes comments pointed at Neiferd's mental health in his performance review as well as recommends that Neiferd receive mental health counseling. Neiferd was receiving conflicting information from Greene and Baker. Neiferd received positive feedback from all his customers, and peers during this period, met his objectives, and exceeded his utilization target which was all included in his review. Regardless, Baker marked Neiferd with "insufficient results" on his review and put Neiferd in a "zero rewards" status, meaning Neiferd was ineligible for bonuses or stock awards. Baker also did not submit Neiferd for his clearance bonus that quarter, which was independent of his performance review.

20. On June 3rd 2022, Neiferd approached Baker's supervisor, Mr. LePage, to report Baker's harassment and the comments Baker made in his review which Neiferd explained were discriminating and targeted at his disability. Neiferd told LePage that Baker did not give him an honest review. LePage agreed to investigate the situation and in the middle of June,

Lepage pulled Neiferd's connect and removed the insufficient results mark. LePage told Baker to rewrite the review. Neiferd's review remained in a "pending" status for the next four months, past the close of the fiscal year and into September. To Neiferd's knowledge, this was not relayed to HR, which does not follow Microsoft's policy on reporting discrimination.

21. Neiferd was detrimentally affected by repeated bullying and disparate treatment from Baker based on his disabilities which led to a deterioration of his mental health to the point of seeking professional help. On June 6, Neiferd started an FMLA approved Leave of absence to see a psychologist and have a mental health evaluation. In August 2022, Neiferd received the results from his testing and was diagnosed with Autism, in addition to his already diagnosed ADHD from 2002, and depression and anxiety in 2020.

22. When Mr. Neiferd returned to work on August 15, 2022, Mr. Baker had not yet rewritten his review. However, Mr. Baker did issue multiple vague threats toward Neiferd, telling him that HR was paying close attention to utilization, and twice he mentioned that he had shielded his "zero rewards" employees from layoff during the last round of cuts, but would not be able to do so again. When Neiferd asked him about his review, Baker told Neiferd he would rewrite it.

23. On September 2, 2022, Neiferd met with LePage again and requested an accommodation to move off Baker's team to a new manager due to the bullying and discrimination from Baker. At the end of September, Neiferd was assigned to Ms. Wickham's team.

24. On September 22, 2022 Baker alerted Neiferd to upcoming company layoffs and that utilization was being scrutinized closely. Neiferd mentioned that last quarter, his utilization was 91.9% (out of a 76% target) which helped the entire team. Baker responded "one person

can move a needle, but we have hundreds of people, we've got people with 120% utilization. It can be too high." Neiferd had previously had low utilization counted against him and other managers have given praise for utilization over target. No matter what Neiferd did, Baker found fault with it.

25. On September 22, Baker submitted a "rewritten" review for Neiferd just before he moved to Ms. Wickham's team, however, Baker did not remove any of the discriminating comments. Baker added in the review that he reached out to Ms. Greene in September, but Greene did not want to discuss the topic any further. Below this, Baker added a paragraph as if it were quoted from Ms. Greene in September, however, some of this appeared to be from a meeting between Baker, Greene, Greene's manager, and Neiferd on May 20, 2022 when Neiferd asked Greene to explain to Baker that this was not a healthy environment for him. Baker also noted Neiferd was not a good "skills fit" without elaborating on the "skills" Neiferd lacked.

26. After moving to Ms. Wickham's team at the end of September, she treated Neiferd as though he would need a lot of support to recover from his poor performance. She assigned him a mentor to help him work on performance and time management. Ms. Wickham told Neiferd that Mr. Baker spoke to her about Neiferd and shared his past performance. Mr. Baker's unjustified and biased opinion had biased Ms. Wickham's view of Neiferd.

27. Neiferd received another review on December 9th, 2022 and was again marked with insufficient results. When Neiferd asked Wickham about his review, he was told that since he had not been on her team for very long, she asked Baker for his input. Wickham told Neiferd that Baker had recommended issuing insufficient results. (Now renamed to "Less than expected" or LITE). Microsoft didn't take Neiferd's complaint about Baker's treatment seriously or do anything to protect him against the continuing discrimination and retaliation.

Complaint for Employment Discrimination

28. On December 20, 2022, Neiferd opened a complaint with Compliance and Ethics and again reported the harassment and discriminatory treatment from Baker, the discriminatory statements in his review from Baker, and that he believed Mr. Baker had recommended an IR rating to Ms. Wickham in retaliation for reporting his discriminatory conduct to Mr. Lepage. The complaint was forwarded to Employee Relations.

29. Employee Relations staff informed Neiferd that no meetings were available until January 10, 2023. On January 10, Neiferd met with Ms. Richardson, and explained his concerns. Ms. Richardson also challenged Neiferd on his statements, despite claiming she was a "neutral party." Neiferd told her that he planned to document his concerns in writing and send them to her. However, before he had a chance to do so, on January 18, he received notice that he was included in the latest round of layoffs. Employee relations transferred the case to Workplace Investigations in February and Neiferd was asked again to resubmit the information. The investigation closed on March 22 and determined Neiferd's allegations were unsubstantiated.

30. Microsoft states in Neiferd's termination letter that the neutral criteria used for selection was relative performance. Baker's discriminatory IR rating directly resulted in Neiferd earning zero rewards in 2022, which ultimately resulted in his termination.

**FIRST CAUSE OF ACTION:**
**Employment Discrimination Because of Disability**
**42 U.S.C. § 12112**

31. The allegations of each of the foregoing paragraphs are restated and incorporated herein as if realleged.

32. Microsoft did not to follow through on withdrawing Baker's discriminatory review after Baker resubmitted it.

33. Microsoft could have accommodated Neiferd's disability, or the disability they perceived, without incurring an undue burden.

34. Microsoft subjected Neiferd to an adverse employment action when Baker issued poor performance reviews to him on the basis of his disability.

35. Although Neiferd reported the discriminatory animus motivating his performance reviews, Microsoft did not follow through on rectifying the bases of those complaints or conduct a timely and thorough investigation of his allegations.

36. Neiferd was selected for layoff because of Baker's discriminatory performance reviews and improper issuing of zero employee rewards.

37. The decision to terminate Neiferd's employment was based upon Baker's discriminatory reviews, therefore Microsoft discharged Neiferd because of a disability.

38. Microsoft applied a performance standard to Neiferd that was less favorable than that applied to employees who are not disabled.

39. As a direct and proximate consequence of Defendant's unlawful actions, Neiferd has suffered and continues to suffer injuries, including but not limited to the loss of wages, loss of bonuses and awards, loss of professional opportunities, emotional pain and suffering, mental anguish, humiliation, damage to reputation, medical expenses, attorneys' fees, and other legal costs and expenses.

**SECOND CAUSE OF ACTION:**
**Retaliation**
**42 U.S.C. § 12203**

40. The allegations of each of the foregoing paragraphs are restated and incorporated herein as if realleged.

41. Microsoft retaliated against Neiferd for objecting to violations of the Americans with Disabilities Act.

42. Neiferd reported concerns regarding disability discrimination in his performance reviews in June, September, and December of 2022.

43. Neiferd also reported Baker's discriminatory behavior toward him in June, September, and December 2022.

44. Neiferd's reports constitute protected activity under the ADA.

45. In June and September 2022, after being instructed to re-write Neiferd's performance review, Baker re-submitted the review without removing any of the discriminatory content.

46. Baker encouraged Neiferd's later supervisor Wickham to issue him another IR review.

47. After Neiferd reported Baker's conduct to LePage, Baker issued threats to Neiferd about upcoming layoffs.

48. Baker told Neiferd utilization is being scrutinized for upcoming layoffs after Neiferd returned from LOA.

49. Neiferd's utilization was used in December 2022 by Wickham to justify an IR review when the target is due in June the following year.

50. Microsoft did not timely investigate Neiferd's reports of discrimination and terminated his employment based upon Baker's discriminatory performance reviews.

51. As a direct and proximate consequence of Defendant's unlawful actions, Neiferd has suffered and continues to suffer injuries, including but not limited to the loss of wages, loss of professional opportunities, emotional pain and suffering, mental anguish, humiliation, damage to reputation, medical expenses, attorneys' fees, and other legal costs and expenses.

Complaint for Employment Discrimination

## THIRD CAUSE OF ACTION
### Hostile Workplace
### 42 U.S.C. § 12112

52. The allegations of each of the foregoing paragraphs are restated and incorporated herein as if realleged.

53. Microsoft subjected Neiferd to unequal employment practices.

54. Neiferd's supervisors utilized language targeted at Neiferd's disabilities during meetings and conversations.

55. Microsoft used negative performance reviews to punish Neiferd for his disabilities and his ability to mask or act as though he is neurotypical.

56. After Neiferd reported misconduct to Workplace Investigations, following Microsoft's policies, Neiferd was subjected to unfavorable standards and retaliation from his supervisors.

57. Microsoft's supervisors were dishonest in Neiferd's performance reviews with the intent to punish Neiferd.

58. Workplace Investigations did not conduct timely, honest, professional investigations or enforce Microsoft's policies.

59. Microsoft allowed its employees to harass and intimidate Neiferd based on his disabilities.

60. As a direct and proximate consequence of Defendant's unlawful actions, Neiferd has suffered and continues to suffer injuries, including but not limited to the loss of wages, loss of professional opportunities, emotional pain and suffering, mental anguish, humiliation, damage to reputation, medical expenses, attorneys' fees, and other legal costs and expenses.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
_____Alexandria_____ DIVISION

Jared Michael Neiferd
   Plaintiff(s),

v.

Microsoft Corporation,
Richmond Vlong Baker
   Defendant(s),

Civil Action Number: 1:24cv1533

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of _the Complaint_.
                (Title of Document)

Jared Neiferd
Name of *Pro Se* Party (Print or Type)

_[signature]_
Signature of *Pro Se* Party

Executed on: 08/30/2024  (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
                (Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)